BRETT J. DAVIS (Utah State Bar No. 7840)
GRANT R. CLAYTON (Utah State Bar No. 4552)
**CLAYTON, HOWARTH & CANNON, P.C.**
6985 Union Park Center, Suite 200
Cottonwood Heights, Utah  84047
P.O. Box 1909
Sandy, Utah  84091
Telephone: (801) 255-5335
Facsimile: (801) 255-5338

Attorneys for Plaintiff Western Timber Frame, Inc.

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| WESTERN TIMBER FRAME, INC., a Utah Corporation, | ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT** |
| vs. | ) ) | (Jury Trial Demanded) |
| WRIGHT TIMBERFRAME, LLC, a Utah Limited Liability Corporation, | ) ) ) | |
| Defendant. | ) ) | |

---

Plaintiff Western Timber Frame, Inc. (hereinafter "Plaintiff" or  "Western") complains

against Defendant Wright Timberframe, LLC (hereinafter "Defendant" or "Wright") and alleges as

follows:

## IDENTITY OF PARTIES

1.    Plaintiff Western is a Utah corporation having a principal place of business at 181 South 1200 East, Suite B, Lehi, Utah 84043 .

2.    Defendant Wright is a Utah limited liability company having an address of 171 Caracara Street, Saratoga Springs, Utah 84045, as listed in the Utah Department of Corporations records.

## JURISDICTION AND VENUE

3.    This is an action arising, in part, under the laws of the United States, including 15 U.S.C. § 1125 and 17 U.S.C. §§ 101, et seq. and related Utah state law.  Thus, original subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338.

4.    The state law claims asserted herein arise out of facts common to the federal claims, all of which are so related that they form part of the same case or controversy, and would be expected to be tried in a common action.  This Court therefore has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.    This Court has personal jurisdiction over Defendant by virtue of its being a Utah limited liability company, its transacting and doing business in this state, its conducting infringing activity in this state, and its causing other tortious injury in this state.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTS

7.    Plaintiff Western, or its predecessors (collectively "Plaintiff" or "Western"), began business in about the summer of 2009 and specializes in the design, manufacture, and

distribution of various timber frame structures for outdoor use, including pergolas, pavilions, arbors, trellises, breezeways, porte-cocheres, awnings, entryways, wood shutters and decks.

8.      When Western began marketing its timber frame structures in the summer of 2009, the odds of success were stacked against it as the entire country was in the midst of a financial crises referred to as the "Great Recession."  In fact, some acquaintances of Western's founders thought them crazy to start a business directed largely to "backyard" timber frame structures when the housing market bubble had recently burst, home prices were in steady decline, and home foreclosures were approaching all-time highs.

9.      Undaunted, Western's founders believed that the unique look and feel of their product designs would set them apart in the industry and lead to success despite the lingering effects of the Great Recession.  Their instincts proved right, Western's product designs literally revitalized a stagnate marketplace by providing timber frame structures that had a distinctive look and feel as compared to the previously available timber frame structures.

10.      As part of its business model, Western sells its timber frame structures directly to consumers as "kits."  To order a kit, consumers contact one of Western's project managers who provided cost estimates as well as design consultation, which may include the project managers visiting the installation site.  Once the kit is ordered, Western ships the kit directly to the consumer.  Western's simple kit designs allow consumers to assemble the structures themselves. Alternatively, Western provided installation services for those consumers who feel uncomfortable installing the kits themselves.

11.     In addition, Western has developed a network of independent dealers throughout the United States through which it distributes its products, including its timber frame kits.

A. *Western's Trade Dress*

12.     Long prior to the acts of Defendant Wright complained of herein, in connection with the sale of its timber frame structure kits, Plaintiff Western obtained trade dress protection in the design and appearance of its timber frame structures.

13.     In particular, the configuration of Western's free-standing pergolas, attached pergolas, arbors, awnings and trellises are radically different from the structures that proceeded them as they provided a distinctive shape and appearance in the marketplace.

14.     In order to understand the uniqueness of Western's product designs, it is helpful to understand alternative pergola designs currently offered by Western's competitors. Reproduced below as Figure 1 is an image of an alternative design for a pergola currently available in the marketplace:



**Figure 1** - Example of Alternative Pergola Design

4

15.     It can be observed from Figure 1 that this alternative pergola design includes a set of front vertical support posts and a set of rear vertical support posts.  Each of the sets of front and rear vertical support ports supports a pair of horizontal support beams, with one of the pairs of horizontal support beams attached on either side of the vertical support posts.  Disposed on the top of the horizontal support beams are a plurality of spaced apart rafters.  Disposed on top of the plurality of rafters are a plurality of spindles.  The horizontal support beams, rafters and top spindles form a double tier structure.  Some observations about the alternative pergola design shown in Figure 1 are as follows:

- The wood used to construct the pergola has a smooth finish known in the industry as S4S (smooth four sides);

- The pairs of horizontal support beams are attached to the sides of the vertical support posts;

- The horizontal spacing between adjacent ones of the rafters is relatively wide;

- The horizontal spacing between adjacent ones of the top spindles is also relatively wide; and

- The mounting hardware for assembling the pergola is visible to the end user.

16.     In contrast to the pergola shown in Figure 1, above, reproduced below in Figure 2 is an image of Western's double tier pergola that incorporates its protected trade dress.



**Figure 2** - Western Free-Standing Pergola With Protected Double Tier
Cover Trade Dress

17.     As can be observed in Figure 2, Western's trade dress for its free-standing double

tier pergola is characterized as follows:

- Western's pergola uses a rough saw cut on the wood;

- Western's top planks are relatively flat as opposed to spindle shaped;

- Western's top planks are spaced relatively close together;

- Western's rafters are spaced relatively close together;

- Western's rafters are relatively tall;

- Western's pergola uses a single horizontal support beam between the vertical

    support posts on all four sides of the structure;

6

- Western's horizontal support beams appear to go through each other as well as the vertical support posts;

- The cantilevered ends of the support beams and the rafters have a decorative scroll cut; and

- Western's pergola has no exposed hardware for connecting the horizontal support beams to the vertical support posts.

[Intentionally Left Blank]

18.     Reproduced below in Figure 3 is an image of Western's double tier arbor that incorporates protected trade dress.



**Figure 3**- Western Arbor with Protected Double Tier Cover Trade Dress

19.     As can be observed in Figure 3, Western's trade dress for its double tier arbor is characterized as follows:

●      Western's arbor uses a rough saw cut on the wood;

●      Western's top planks are relatively flat as opposed to spindle shaped;

●      Western's rafters are relatively tall;

8

- Western's arbor uses a single horizontal support beam between the vertical support posts on all four sides of the structure;

- Western's horizontal support beams appear to go through each other as well as the vertical support posts;

- The cantilevered ends of the support beams and the rafters have a decorative scroll cut; and

- Western's arbor has no exposed hardware for connecting the horizontal support beams to the vertical support posts.

[Intentionally Left Blank]

20.     Reproduced below in Figure 4 is an image of Western's double tier attached

pergola that incorporates its protected trade dress.



**Figure 4** - Western Attached Pergola With Protected Double Tier
Cover Trade Dress

21.     As can be observed in Figure 4, Western's trade dress for its attached double tier

pergola is characterized as follows:

- Western's attached pergola uses a rough saw cut on the wood;

- Western's top planks are relatively flat as opposed to spindle shaped;

- Western's top planks are spaced relatively close together;

- Western's rafters are spaced relatively close together;

- Western's rafters are relatively tall;

- Western's attached pergola uses a single horizontal support beam between the vertical support posts on the front side of the structure;

- Western's horizontal support beam appears the vertical support posts;

- The cantilevered ends of the support beams and the rafters have a decorative scroll cut; and

- Western's attached pergola has no exposed hardware for connecting the horizontal support beam to the vertical support posts.

[Intentionally Left Blank]

22.     Reproduced below in Figure 5 is an image of Western's awning that incorporates

protected trade dress.



**Figure 5** - Western Awning with Protected Double Tier Cover Trade Dress

23.     As can be observed in Figure 5, Western's trade dress for its awning is

characterized as follows:

●      Western's awning includes a double tier structure formed from rafters disposed on

a horizontal support beam and top planks disposed on top of the rafters;

●      Western's awning uses a rough saw cut on the wood;

●      Western's top planks are relatively flat as opposed to spindle shaped;

●      Western's rafters are relatively tall;

12

- Western's awning uses a single horizontal support beam between the vertical support members attached to the structure;

- Western's horizontal support beam appears to go through the vertical support members;

- The cantilevered ends of the support beam and the rafters have a decorative scroll cut; and

- Western's awning has no exposed hardware for connecting the horizontal support beam to the vertical support member.

24.   Reproduced below in Figure 6 is an image of Western's trellis that incorporates its protected trade dress.



**Figure 6**- Western Trellis With Protected Double Tier Cover Trade Dress

25.     As can be observed in Figure 6, Western's trade dress for its trellis is characterized as follows:

● Western's trellis includes a double tier structure formed from rafters disposed on horizontal support beams and top planks disposed on top of the rafters;

● Western's trellis uses a rough saw cut on the wood;

● Western's top planks are relatively flat as opposed to spindle shaped;

● Western's rafters are relatively tall;

● The ends of the support beam and the rafters have a decorative scroll cut; and

● Western's trellis has no exposed hardware.

26.     Reproduced below in Figure 7 is an image of a Western pavilion structure that incorporates protected trade dress:



**Figure 7**- Western Pavilion with Protected Trade Dress

14

27.     As shown in Figure 7, Western's trade dress for its pavilion is characterized by:

●     Western's pavilion uses a rough saw cut on the wood;

●     Western's horizontal support beams appear to go through each other as well as the vertical support posts;

●     The cantilevered ends of the support beams and the rafters have a decorative scroll cut; and

●     Western's pavilion has no exposed hardware for connecting the horizontal support beams to the vertical support posts.

28.     Western owns five Utah trademark registrations for its unique designs for timber frame structures.

29.     Western is the owner of Utah State Trademark Registration No. 9110887-0190 for a design of a timber framed pergola having a double tier cover.  A true and correct copy of this registration is attached hereto as Exhibit 1.

30.     Western is the owner of Utah State Trademark Registration No. 9110891-0190 for a design of an attached timber framed pergola having a double tier cover.  A true and correct copy of this registration is attached hereto as Exhibit 2.

31.     Western is the owner of Utah State Trademark Registration No. 9110893-0190 for a design of a timber framed trellis having a double tier cover.  A true and correct copy of this registration is attached hereto as Exhibit 3.

32.     Western is the owner of Utah State Trademark Registration No. 9110900-0190 for a design of a timber framed awning having a double tier cover.  A true and correct copy of this registration is attached hereto as Exhibit 4.

33.     Western is the owner of Utah State Trademark Registration No. 9110914-0190 for a design of a timber framed pavilion.  A true and correct copy of this registration is attached hereto as Exhibit 5.

34.     When Western's  timber frame structures with the trade dress identified herein entered the marketplace, they delivered timber frame structures having a unique look and feel as compared to other similarly purposed products in the marketplace.

35.     Western's trade dress identified herein is not essential to the use or purpose of its timber frame structures.

36.     Western's trade dress identified herein does not affect the cost of its timber frame structures.

37.     Western's trade dress identified herein does not affect the quality of its timber frame structures.

38.     Western's trade dress identified herein is not functional.

39.     Western's trade dress identified herein is inherently distinctive and serves to identify the source of Western's timber frame structures.

40.     Alternative designs to Western's trade dress are available to competitors.

41.     Western's trade dress has acquired distinctiveness, or secondary meaning, because consumers have come to associate such dress with a particular source due to Western's long use of its trade dress in commerce.

42.     Western's trade dress has acquired distinctiveness, or secondary meaning, because consumers have come to associate such dress with a particular source due to Western's substantially exclusive use of its trade dress in commerce.

43.     Western's trade dress has acquired distinctiveness, or secondary meaning, because consumers have come to associate such dress with a particular source due to the amount and manner of advertising conducted by Western.  In particular, Western has expended over $1,000,000 in advertising both online, print and other sources since 2009.  As a result of said advertising, consumers have come to associated Western's trade dress with a particular source.

44.     Western's trade dress has acquired distinctiveness, or secondary meaning, because consumers have come to associate such dress with a particular source due to the amount of Western's sales.  In particular, Western has sold nearly $10,000,000 of product incorporating its trade dress since 2009.

45.     Western's trade dress has acquired distinctiveness, or secondary meaning, because consumers have come to associate such dress with a particular source due to Western's position in the marketplace as one of the largest manufacturers of timber frame structures sold as kits.

46.     As evidence of acquired distinctiveness, or secondary meaning, Western notes that its trade dress has been intentionally copied by competitors, including Defendant Wright.

17

47.    As further evidence of acquired distinctiveness, or secondary meaning, Western notes that its trade dress has won several awards for its designs, including winning first place at a home and garden show.

B. *Western's Trademark*

48.    Long prior to the acts of Defendant Wright complained of herein, Plaintiff Western used its trademark WT in connection with the promotion and sale of its timber frame products.

49.    Through its long use in commerce, Western is the owner of the trademark WT for use in association with the marketing and selling of timber products.

50.    Consumers have come to recognize Western's trademark WT as a source indicator for timber frame products.

C. *Western's Copyright*

51.    Western is, and at all relevant times has been, the copyright owners under United States copyright law with respect to certain copyrighted technical drawings for timber frame structures.

52.    Western is the owner of U.S. Copyright Registration No. VAu 1-174-611 entitled "Technical Drawings of Timber Frame Structures" that has a effective date of registration of July 16, 2014.  A true and correct copy of Registration No. VAu 1-174-611 is attached hereto as Exhibit 6.    The technical drawings protected by U.S. Copyright Registration No. VAu 1-174-611 includes drawings for the Western structures shown in Figures 2-7, above.

18

*D.  Wright's Infringement of Western's Trade Dress*

53.     Upon information and belief, in or about 2013, Wright began selling timber frame structures that incorporate Western's trade dress identified herein.

54.     Upon information and belief, Wright directly and wilfully copied Western's protected trade dress when creating the design of one or more of its timber frame structures in order to piggy back on the success of Western in the marketplace.  In fact, Wright has copied virtually Western's entire product line.

55.     Upon information and belief, Wright acted in bad faith by copying Western's trade dress with the intent to cause confusion or to benefit from Western's reputation in the marketplace.

[Intentionally Left Blank]

56.     Wright manufacturers and sells a free-standing pergola kit that incorporates

Western's protected trade dress, as shown below in side by side comparison.

| Western's Protected Free-Standing Pergola | Wright's Infringing Free-Standing Pergola |
|---|---|

 

57.     Wright manufacturers and sells a pergola kit that incorporates Western's

protected trade dress, as shown below in side by side comparison.

| Western's Protected Attached Pergola | Wright's Infringing Pergola |
|---|---|

 

58.     Wright manufacturers and sells a trellis kit that incorporates Western's protected

trade dress, as shown below in side by side comparison.

Western's Protected Trellis                    Wright's Infringing Trellis



59.     Wright manufacturers and sells a pavilion kit that incorporates Western's

protected trade dress, as shown below in side by side comparison.

Western's Protected Pavilion                    Wright's Infringing Pavilion



60.     Wright's adoption of trade dress that slavishly copies Western's trade dress is likely to cause confusion or mistake, or to deceive consumers, purchasers, and others into thinking that Wright's products are Western products, or that they are sponsored by or affiliated with Western, when they are not.

61.     On information and belief, Wright's marketing has played up the similarities between its timber frame structures and Western's timber frame structures.  For example, Wright placed copied portions of Western's website on its own website, which portions were subsequently removed by Wright in response to Western's demand to do so

*E. Wright's Infringement of Western's WT trademark*

62.     In association with the promotion and sale of its timber frame structures, Wright adopted and is using Western's WT mark.

63.     Upon information and belief, Wright adopted the WT mark with the intent to cause confusion or to benefit from Western's reputation in the marketplace.

64.     Wright's use of the WT mark is an infringement of Western's trademark rights in its WT mark.

65.     Western is the senior user of the WT mark as compared to Wright.

*F. Wright's Infringement of Western's Copyright*

66.     Western is informed and believes that Wright, without the permission or consent of Western, has copied, and continues to copy, Western's technical drawings covered under U.S. Registration No. VAu 1-174-611 in order to build its timber frame structures.

67.     Wright's action have violated Western's exclusive rights of reproduction and distribution of its technical drawings.

68.     Western is informed and believes that Wright's foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of Western.

69.     Western's efforts to address Wright's pervasive copying of Western's innovations and intellectual property directly with Wright have been unsuccessful.  Western is left with no choice but to file this lawsuit in order to protect one of its most valuable assets- the trade dress rights in its timber frame structures

## FIRST CAUSE OF ACTION

### (Federal Unregistered Trade Dress Infringement/Unfair Competition)

### (Lanham Act Section 43(a), 15 U.S.C. § 1125(a))

70.     Plaintiff Western hereby realleges and incorporates by this reference the preceding paragraphs as if fully set forth herein.

71.     Western is the owner of all right and title to the distinctive product trade dress used on its timber frame structures, including free-standing pergolas, attached pergolas, arbors, awnings, trellises and pavilions.  Western's product trade dress has acquired secondary meaning, and is not functional.

72.     Western's extensive promotion of its distinctive trade dress in its timber frame structures has resulted in Western's acquisition of valuable, legally protected rights as well as considerable good will.

23

73.     Wright's manufacture and distribution of its timber frame products with product designs that mimic Western's trade dress is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Wright with Western, or as to the origin, sponsorship, or approval by Western of Wright's goods.

74.     Wright's manufacture and distribution of its timber frame products with product designs that mimic Western's trade dress enables Wright to unfairly benefit from Western's reputation and success, thereby giving Wright's infringing products sales and commercial value they would not have otherwise.

75.     Wright's actions constitute unfair competition and false designation or origin in violation of Section 43(a) of the Lanhan Act, 15 U.S.C. § 1125(a).

76.     Wright knew of Western's trade dress when it designed its products, and has refused to change its product design in response to Western's objections.  Accordingly, Wright's infringement has been and continues to be intentional, willful, and without regard to Western's rights.

77.     Western has been and will continue to be irreparably harmed and damaged by Wright's conduct.

78.     Because Wright's actions have been willful, Western is entitled to treble its actual damages or Wright's profits, whichever is greater, and to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

24

## SECOND CAUSE OF ACTION

**(Federal Unregistered Trademark Infringement/Unfair Competition)**

**(Lanham Act Section 43(a), 15 U.S.C. § 1125(a))**

79.     Plaintiff Western hereby realleges and incorporates by this reference the preceding paragraphs as if fully set forth herein.

80.     Western is the owner of all right and title to the WT mark when used in conjunction with the sale and promotion of timber frame products.

81.     Western's extensive promotion of its WT mark has  resulted in Western's acquisition of valuable, legally protected rights as well as considerable good will.

82.     Wright's use of the WT mark is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Wright with Western, or as to the origin, sponsorship, or approval by Western of Wright's goods in violation of Section 43(a) of the Lanhan Act, 15 U.S.C. § 1125(a).

83.     Wright's use of the WT mark enables Wright to unfairly benefit from Western's reputation and success, thereby giving Wright's infringing products sales and commercial value they would not have otherwise.

84.     Wright's actions constitute unfair competition and false designation or origin in violation of Section 43(a) of the Lanhan Act, 15 U.S.C. § 1125(a).

85.     Western has been and will continue to be irreparably harmed and damaged by Wright's conduct.

86.     Because Wright's actions have been willful, Western is entitled to treble its actual damages or Wright's profits, whichever is greater, and to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION

**(State Trademark Infringement, Utah Code Ann. §§ 70-3a-101 et seq.)**

87.     Plaintiff Western hereby realleges and incorporates by this reference the preceding paragraphs as if fully set forth herein.

88.     Western is the owner of Utah State Trademark Registration Nos. 9110887-0190; 9110891-0190; 9110893-0190;  9110900-0190; and 9110914-0190 for product designs in various timber frame structures as shown in Exhibit 1-5, attached hereto.

89.     Wright is using a reproduction, counterfeit, copy, or colorable imitation of Western's product designs in its Utah registrations without Western's consent.

90.      Wright's manufacture and distribution of its timber frame products with product designs that mimic Western's marks in its Utah registrations is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Wright with Western, or as to the origin, sponsorship, or approval by Western of Wright's goods.

91.     Wright's actions constitute trademark infringement in violation of Utah Code Ann. § 70-3a-402.

## FOURTH CAUSE OF ACTION

### (Common law Trade Dress and Trademark Infringement)

92.     Plaintiff hereby realleges and incorporates by this reference the preceding paragraphs as if fully set forth herein.

93.     Western is the owner of all right and title to the distinctive product trade dress used on its timber frame structures, including free-standing pergolas, attached pergolas, arbors, awnings, trellises and pavilions.

94.     Western's product trade dress has acquired secondary meaning, and is not functional.

95.     Western is the owner of all right and title to the WT mark used in association with the promotion and sale of timber frame structures.

96.     Western's extensive promotion of its distinctive trade dress in its timber frame structures and it use of the WT mark has resulted in Western's acquisition of valuable, legally protected rights as well as considerable good will.

97.     Wright's manufacture and distribution of its timber frame products with product designs that mimic Western's trade dress and its use of the WT mark is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Wright with Western, or as to the origin, sponsorship, or approval by Western of Wright's goods.

98.     Wright's manufacture and distribution of its timber frame products with product designs that mimic Western's trade dress and its use of the WT mark enables Wright to unfairly

benefit from Western's reputation and success, thereby giving Wright's infringing products sales

and commercial value they would not have otherwise.

99.     Wright's actions violate Western's common law trade dress and trademark rights.

## FIFTH CAUSE OF ACTION

### (State Unfair Competition, Utah Code Ann. §§ 13-5a-101, et seq.)

100.     Plaintiff hereby realleges and incorporates by this reference the preceding

paragraphs as if fully set forth herein.

101.     Western is the owner of all right and title to the distinctive product trade dress

used on its timber frame structures, including free-standing pergolas, attached pergolas, arbors,

awnings, trellises and pavilions.  Western's product trade dress has acquired secondary meaning,

and is not functional.

102.     Western is the owner of all right and title to the WT mark used in association with

the promotion and sale of timber frame structures.

103.     Western's extensive promotion of its distinctive trade dress in its timber frame

structures and of its WT mark has resulted in Western's acquisition of valuable, legally protected

rights as well as considerable good will.

104.     Wright's manufacture and distribution of its timber frame products with product

designs that mimic Western's trade dress and its use of the WT mark is likely to cause confusion,

or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of

Wright with Western, or as to the origin, sponsorship, or approval by Western of Wright's goods.

28

105.    Wright's manufacture and distribution of its timber frame products with product designs that mimic Western's trade dress and its use of the WT mark enables Wright to unfairly benefit from Western's reputation and success, thereby giving Wright's infringing products sales and commercial value they would not have otherwise.

106.    Wright's actions described herein constitute an intentional business act or practice that is unlawful, or unfair and leads to a material diminution in value of Plaintiff's intellectual property.

107.    Pursuant to Utah Code Ann. §§ 13-5a-103, Plaintiff is entitled to recover actual damages, costs and attorneys' fees, and punitive damages.


## SIXTH CAUSE OF ACTION

### (Federal Copyright Infringement, 17 U.S.C. § 101, et seq.)

108.    Plaintiff hereby realleges and incorporates by this reference the preceding paragraphs as if fully set forth herein.

109.    Western has properly registered and own or control the copyrights in technical drawings for various timber frame structures as evidenced by Western's copyright registration shown in Exhibit 6.

110.    Without authorization from Western, or right under law, Wright has unlawfully reproduced Western's copyrighted works, or prepared derivative works based on Western's copyrighted works, or distributed copies of Western's  copyrighted works.

111.    Through its conduct averred herein, Wright has infringed Western's registered copyright in its technical drawings in violation of 17 U.S.C. §§ 106 and 501.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Western prays for judgment against Defendant Wright as follows:

A.  That Defendant be held to have infringed Western's trade dress rights, trademark rights, and copyrights;

B.  That Defendant be held to have committed unfair or deceptive acts, practices or misrepresentations in violation of Federal law and common law;

C.  That Defendant be held to have violated the Utah Registration and Protection of Trademarks and Service Marks Act;

D.  That Defendant be held to have violated the Utah State Unfair Competition Act;

E.  That judgment be entered for Plaintiff Western and against Defendant for actual damages according to proof, prejudgment interest, and for any additional profits attributable to infringements of Plaintiff Western's trade dress, trademarks, and copyrights in accordance with proof.

F.  That Defendant, its agents, officers, directors, employees, and all other persons in active concert or privity or in participation with it be temporarily and permanently enjoined from directly or indirectly infringing Plaintiff Western's trade dress, trademark and copyrights or continuing to use, market, offer, sell, dispose of, license, lease, transfer, display, advertise,

reproduce, develop or manufacture any goods in connection with a design or trademark infringing Plaintiff Western's rights or to participate or assist in any such activity.

G.  That Defendant and all persons in active concert or privity or in participation with it be ordered to recall from all distributors, retailers and all others known to Defendant, any goods in connection with a design shown by the evidence to infringe Plaintiff Western's trade dress or trademark rights.

H.  That Defendant be enjoined to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all items shown by the evidence to infringe Plaintiff Western's trade dress or trademarks.

I.  That judgment be entered for Plaintiff Western and against Defendant for the actual damages according to proof, that such damages be trebled, together with the costs of the suit and reasonable attorney's fees and prejudgment interest, attributable to Defendant's acts of unfair or deceptive acts, practices or misrepresentations in violation of Lanham Act § 43(a) or in violation of Utah state law.

J.  That Defendant be required to account for all gains, profits, and advantages derived from its acts of infringement and other violations of law.

K.  That Plaintiff Western have judgment against Defendant for costs and attorneys fees and prejudgment interest.

L.  That Defendant be required to pay prejudgment and post-judgment interest until such awards are paid.

M.  That Plaintiff Western shall have other and further relief as shall seem just and proper to the Court and as allowed by law.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues so triable.

DATED this 8th day of October, 2014.

CLAYTON, HOWARTH & CANNON, P.C.

/s/ Brett J. Davis
Brett J. Davis
Grant R. Clayton
Clayton, Howarth & Cannon, P.C.
Attorneys for Plaintiff Western Timber Frame, Inc.
P.O. Box 1909
Sandy, Utah 84091
Telephone: (801) 255-5335
Facsimile: (801) 255-5338

S:\CHC Files\T12--\T129--\T12946\1\complaint.20141008.wpd